624 So.2d 485 (1993)
MISSISSIPPI STATE BOARD OF NURSING
v.
John WILSON.
No. 91-CA-54.
Supreme Court of Mississippi.
September 2, 1993.
*487 Michael C. Moore, Atty. Gen., Sara E. DeLoach, Sp. Asst. Atty. Gen., Alice D. Wise, Sp. Asst. Atty. Gen., Jackson, for appellant.
John Robert White, E. Michael Marks, Jackson, for appellee.
Before PRATHER, P.J., and BANKS and SMITH, JJ.
BANKS, Justice, for the court:
In this appeal from a judgment of the Chancery Court of the First Judicial District of Hinds County reversing a decision of an administrative agency, we are asked to decide whether the decision rendered by the Mississippi State Board of Nursing revoking the nursing license of John Wilson is supported by substantial, credible evidence that he (1) was addicted to or dependent upon alcohol or other habit-forming drugs, primarily cocaine, within the meaning of the statute, and (2) engaged in conduct constituting a crime and likely to deceive, defraud or harm the public. Wilson raises six (6) issues in a cross-appeal from the judgment of the chancery court reversing the decision of the Board as to the addiction issue and resinstating Wilson, despite a finding upholding the decision of the Board with respect to the conduct issue. The issues raised by Wilson in his cross-appeal are either moot or devoid of merit. We affirm the chancellor as to the addiction issue. We reverse her order reinstating Wilson, however, and remand this matter to the Board of Nursing for consideration whether his license should be revoked on the conduct issue standing alone.

I
John Wilson is a forty-two year old licensed registered nurse who was employed in 1987 as a nursing supervisor in the Chemical Dependency Unit at the Mississippi State Hospital at Whitfield. Wilson had been previously employed as a nurse at the St. Joseph *488 Memorial Hospital in Meridian, Mississippi, and the Delta Medical Center in Greenville.
Transcripts of prior hearings conducted before the Board of Nursing on December 2, 1976; January 17, 1979; March 27, 1980; and March 26, 1981, were introduced into evidence and reflect Wilson's prior history with habit-forming drugs.
The transcript of the 1976 hearing reflects that Wilson's license was revoked  with revocation suspended for two years and stipulations attached  after he misappropriated a bottle of cocaine from the pharmacy at St. Joseph Memorial Hospital. Wilson had entered a plea of guilty to petit larceny in Lauderdale County and had paid a hundred dollar fine.
The transcript of the 1979 hearing reflects that Wilson fulfilled the stipulations with his revocation of suspension of license and that said stipulations were removed from his license to practice nursing.
The transcript of the 1980 hearing reflects that in March of 1980 Wilson's nursing license was revoked after he was found to be "habitually intemperate" with habit-forming drugs, namely, demerol and morphine, while employed by the Delta Medical Center in Greenville, Mississippi. Wilson, who entered a plea of guilty before the board, freely admitted during this hearing that over a short period of time he misappropriated for his own personal use the equivalent of two boxes of demerol and morphine that were missing from the "emergency department." Wilson claimed this was his first encounter with the use of drugs and testified he personally used the drugs over a period of two months. During this hearing in 1980 Wilson freely admitted he had a drug problem.
Finally, the transcript of the 1981 hearing reflects that after Wilson's self-use of demerol and morphine by injection in 1979 or 1980, his nursing license was reinstated on March 26, 1981, following a series of drug screens which were negative for habit-forming drugs. During this hearing Wilson again alluded to his problem with drugs.
On January 17, 1990, Wilson appeared at another disciplinary hearing conducted before the Board of Nursing. This time in the wake of a complaint filed on November 16, 1989, charging that Wilson violated Miss. Code Ann. § 73-15-29(1)(h) (Supp. 1992) in that he was addicted to or dependent on alcohol or other habit-forming drugs; Miss. Code Ann. § 73-15-29(1)(j) (Supp. 1992) in that Wilson engaged in conduct constituting a crime, i.e., false pretenses; and Miss. Code Ann. § 73-15-29(1)(k) (Supp. 1992) in that he engaged in conduct likely to deceive, defraud or harm the public. The latter two charges flowed from an allegation that Wilson, with the intent to defraud, fraudulently received from an employee an $80 check and converted these funds to his own use.
Following the testimony of seven (7) witnesses produced by the board, the testimony of Wilson in his own behalf, the introduction into evidence of bank and hospital records, and the introduction of the four (4) transcripts of previous hearings, the board found as a fact and concluded as a matter of law that Wilson was guilty of each of the three violations. On May 13, 1991, the board issued a final order revoking Wilson's nursing license.
On December 5, 1990, the chancellor issued her order finding that (1) Wilson's license was revoked on the basis of collective charges, (2) the decision of the board with respect to its finding of drug addiction and dependency was not supported by substantial evidence and was arbitrary and capricious, (3) the board met its burden of proof with regard to the two other charges, and (4) Wilson's license should be reinstated without restrictions.
The Mississippi State Board of Nursing [hereinafter "the Board of Nursing"] appeals from a judgment entered on December 5, 1990, by the Chancery Court of the First Judicial District of Hinds County reversing a decision rendered by the Board of Nursing and reinstating Wilson's nursing license without restrictions.
In its appeal to this Court, the Board of Nursing poses two inquiries for appellate scrutiny.
(1) Whether a finding by the Board of Nursing of cocaine addiction in violation of Miss. Code Ann. § 73-15-29(1)(h) (Supp. 1992) *489 was based upon substantial, credible evidence or was arbitrary and capricious.
(2) Whether the chancellor erred in reinstating Wilson's nursing license.
Wilson has filed a cross-appeal raising issues dealing with (1) the sufficiency of the evidence establishing that Wilson engaged in conduct constituting a crime in violation of § 73-15-29(1)(j) and conduct likely to deceive, defraud or harm the public in violation of § 73-15-29(1)(k), and (2) alleged violations of procedural due process implicating (a) purported violations of the Open Meetings Act, (b) the failure of the Board of Nursing to properly authenticate bank records, hospital records, and transcripts of prior hearings of the Board of Nursing, and (c) the adequacy of the board's findings of fact and conclusions of law.

II

A. Scope of Review
Our judicial review of this administrative appeal is limited. In Mississippi State Tax Commission v. Mississippi-Alabama State Fair, 222 So.2d 664 (Miss. 1969), we recognized that
[o]ur Constitution does not permit the judiciary of this state to retry de novo matters on appeal from administrative agencies. Our courts are not permitted to make administrative decisions and perform the functions of an administrative agency. Administrative agencies must perform the functions required of them by law. When an administrative agency has performed its function, and has made the determination and entered the order required of it, the parties may then appeal to the judicial tribunal designated to hear the appeal. The appeal is a limited one, however, since the courts cannot enter the field of the administrative agency. The court will entertain the appeal to determine whether or not the order of the administrative agency (1) was supported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party. This rule has been thoroughly settled in this state.

See also United Cement Company v. Safe Air for the Environment, Inc., 558 So.2d 840 (Miss. 1990); Melody Manor Convalescent Center v. Mississippi State Department of Health, 546 So.2d 972 (Miss. 1989); Spradlin v. Board of Trustees of Pascagoula Municipal Separate School District, 515 So.2d 893 (Miss. 1987); Eidt v. City of Natchez, 421 So.2d 1225 (Miss. 1982); Mainstream Savings and Loan Association v. Washington Federal Savings and Loan Association, 325 So.2d 902 (Miss. 1976).
"The only grounds for overturning administrative agency action by the appellate process is that the state agency has acted capriciously, unreasonably, arbitrarily; has abused its discretion or has violated a vested constitutional right of a party." Melody Manor Convalescent Center v. Mississippi State Department of Health, 546 So.2d 972, 974 (Miss. 1989).
"Moreover, there is a rebuttable presumption in favor of the action of an administrative agency and the burden of proof is upon one challenging its action." County Board of Education of Alcorn County v. Parents and Custodians of Students at Rienzi School Attendance Center, 251 Miss. 195, 168 So.2d 814, 818 (1964). See also Mississippi Hospital Association, Inc. v. Heckler, 701 F.2d 511, 516 (5th Cir.1983) ["A presumption of validity attaches to agency action, and the burden of proof rests with the party challenging such action."]
The federal courts have held that the entire issue in judicial review of an administrative decision always is whether the decision was erroneous, and the Constitution is not implicated unless the decision goes beyond mere error to an intentional or reckless disregard of the constitutional rights of a person against whom the administrative decision is made. Bass v. United States Department of Agriculture, 737 F.2d 1408, 1415 (5th Cir.1984). Although there is a presumption of regularity, and while the "arbitrary and capricious" standard of review is highly deferential, it is by no means a "rubber stamp." *490 United States v. Garner, 767 F.2d 104, 116 (5th Cir.1985).
In State Farm Insurance Company v. Gay, 526 So.2d 534, 535 (Miss. 1988), this Court said: "We give due deference to the factual findings of the administrative agency and to the chancellor who adopted the same findings."
With these basic ground rules in mind, we turn to an analysis of the nursing board's and Wilson's individual complaints.

B. Was There Substantial Credible Evidence of Addiction or Dependency? Was the Decision of the Board of Nursing Arbitrary and Capricious?

By virtue of § 73-15-29(1)(h) the Board of Nursing is empowered to revoke a nursing license upon proof that a person "[i]s addicted to or dependent on alcohol or other habit-forming drugs or is a habitual user of narcotics, barbiturates, amphetamines, hallucinogens, or other drugs having similar effect, or has misappropriated any medication." The complaint in this case charged that Wilson violated subsection (h) "in that he is addicted to or dependent on alcohol or other habit-forming drugs, primarily cocaine."
The chancellor found, inter alia, that "... the decision of the Board of Nursing with regard to the Appellant's alleged violation of Miss. Code Ann. Section 73-15-29(1)(h) was not supported by substantial evidence and was arbitrary and capricious; ... ." A review of the proceedings makes clear that the chancellor was not questioning whether Wilson is an "addict" in the medical sense but rather whether the statute is properly interpreted to allow the board to revoke a license based on the mere status of addiction regardless of whether the license holder is recovering and regardless of the length of time which has elapsed between the last use of the intoxicant and the revocation proceeding. The board took the position that it was within its statutory power to revoke a license even if the nurse was shown not to have used an intoxicating substance within as long as the past ten years.
The proof before the board that Wilson was addicted to or dependent upon alcohol, cocaine, or other habit-forming drugs consisted of the following:
(1) Wilson's admission to Investigator Carl Skidmore on August 11, 1989, that Wilson had been treated in 1988 for "cocaine addiction." Skidmore testified that Wilson told him he had smoked cocaine between June and October of 1988, that he drank alcohol to come down off cocaine, and that Wilson voluntarily sought initial treatment at the Harbor House where he was an inpatient for thirty (30) days and secondary treatment at Victory Manor where he received therapy for sixty (60) days. The testimony of Skidmore was not impeached, and Wilson never denied he told Skidmore he was "addicted" to cocaine.
(2) The testimony of Martha Collins, program coordinator for recovering nurses, that she was present during the Skidmore interview and heard Wilson tell Skidmore "he used" cocaine between June and September of 1988, and was drinking whiskey to come down from cocaine.
(3) The statements of Thomas Milhorn, Jr., a physician certified in addiction medicine who had neither seen nor treated Wilson, that a drug addict is one who is currently or has in the past been addicted to drugs, that addiction is treatable but not curable, and addiction is forever. Dr. Milhorn had examined transcripts of prior hearings conducted on December 2, 1976; January 17, 1979; March 27, 1980; and March 26, 1981. He testified that based solely upon the content of the four (4) transcripts, Wilson has had "a long history of problems with drugs." The recommended treatment for cocaine addiction was inpatient treatment for twenty-eight days, one to three months therapy at a halfway house, and two years of aftercare with random drug screening.
(4) The testimony of John Wilson that he told Skidmore during the interview conducted in 1989 about "some drug problem" he had in 1988 and Wilson's admission during the hearing he had been treated for "substance abuse." Wilson testified he used cocaine for the first time in 1975 or 1976, and for the last time between June and September of 1988. When asked if he had been treated for cocaine addiction, Wilson replied *491 he had been treated for "substance abuse." Wilson had received all the therapy recommended for "addiction" save for extended aftercare.
(5) Wilson's testimony contained within the transcripts of the prior hearings conducted before the nursing board in 1976, 1979, 1980, and 1981, reflect that Wilson (1) had misappropriated cocaine from a hospital pharmacy in 1976, and (2) had his nursing license revoked in 1980 for being "habitually intemperate" with habit-forming drugs, namely demerol and morphine, which Wilson had misappropriated from the emergency room of the Delta Medical Center and had taken by injection for his own use over a period of two months. The transcripts reflect quite clearly that Wilson was acutely aware he had a serious problem with drugs and that he voluntarily sought therapy and rehabilitation for this problem. During the hearing conducted on March 27, 1980, Wilson testified he was "beginning to understand more about `drug addiction', and about things that might have caused me to go to that type of activity." Wilson also testified he did not seek treatment after the initial incident involving misappropriation of cocaine because he did not understand his problem at that time. During the hearing conducted on March 26, 1981, Wilson testified his drug usage was concentrated over a period of a year and a half.
(6) The treatment undertaken voluntarily by Wilson was the same treatment prescribed by Dr. Milhorn for "addiction."
(7) Stealing from the workplace habit-forming drugs kept under lock and key is a social dysfunction indicative of a desperate need for drugs. Wilson misappropriated from his place of employment a bottle of cocaine in 1976 and demerol and morphine in 1979-80.
Although asked specifically if he could tell the board whether or not Wilson was presently a "cocaine addict", Dr. Milhorn declined to answer that question, stating only that he was present for the purpose of testifying about some facts on chemical dependency.
Wilson claimed he had not used drugs or alcohol in any form since 1988. A urine screen administered to Wilson on July 6, 1990, six (6) months after the hearing before the nursing board in January, was negative for habit-forming drugs.
In order to justify revocation of Wilson's license, it was necessary that the Board of Nursing have before it substantial, credible evidence that Wilson was either addicted to or dependent upon alcohol, cocaine, or other habit-forming drugs. Although Wilson had been clean and sober for more than a year prior to his hearing before the Board of Nursing, the board based its revocation, at least in part, on a finding that Wilson was either addicted to or dependent upon cocaine or other habit-forming drugs.
The board contends that Wilson's admissions, coupled with the transcripts of the prior hearings and the testimony of the witnesses appearing at the hearing, constitute substantial, credible evidence that Wilson is "addicted" to or "dependent" upon habit-forming drugs, primarily cocaine. Wilson, on the other hand, argues that the terms "addiction" and "dependency" as used in § 73-15-29(1)(h) mean an ongoing and continuous use of habit-forming drugs and not isolated incidents of usage similar to Wilson's which were separated in time by periods of three (3) years and eight (8) years. We agree.
"Because § 73-15-29 permits revocation of a nursing license, it is penal in nature and therefore must be strictly construed against the governmental agency (the Nursing Board) when attempting to revoke a license." Hogan v. Mississippi Board of Nursing, 457 So.2d 931, 934 (Miss. 1984). At least one court of appeals in one of our sister states has interpreted a similar statute to require active addiction at the time of the hearing. Colorado State Board of Nursing v. Crickenberger, 757 P.2d 1167 (Colo. App. 1988). Applying that holding that court reversed a decision that a nurse, who had not been shown to have used an intoxicating substance in six months, was addicted within the meaning of that state's license revocation law. Colorado State Board of Nursing v. Lang, 842 P.2d 1383, 1388-89 (Colo. App. 1992).
We have not previously interpreted our statute. We need not follow Colorado to *492 require active addiction at the time of the hearing. Any reasonable interpretation of the statute, however, would require some temporal proximity of active addiction to the disciplinary action. The board's stated position that it has the power to revoke a license if it finds addiction to have been active ten years in the past, even if it is in "full remission", See, Lang 842 P.2d at 1388, is simply unreasonable.
The facts reflect that since 1988, when Wilson finished his treatment at Harbor House and Victory Manor, he has not used drugs or alcohol of any kind. He testified that he was in after-care. The urine screen conducted in July of 1990 during the pendency of Wilson's appeal in chancery court did not detect the presence of any habit-forming drugs.
In the absence of a showing that the board applied a reasonable standard, the conclusion is inescapable that the decision as to addiction is arbitrary.
"Arbitrary" means fixed or done capriciously or at pleasure. An act is arbitrary when it is done without adequately determining principle; not done according to reason or judgment, but depending upon the will alone,  absolute in power, tyrannical, despotic, non-rational,  implying either a lack of understanding of or a disregard for the fundamental nature of things.
Mississippi State Department of Health v. Southwest Mississippi Regional Medical Center, 580 So.2d 1238, 1240 (Miss. 1991).

C. Did the Chancellor Err In Reinstating Wilson's Nursing License?

The chancellor found "... that the Appellant's license was revoked by Order of the Board of Nursing on the collective charges of the Appellant's alleged violations of Miss. Code Ann. Section 73-15-29(1)(h), 73-15-29(1)(j), and 73-15-29(1)(k) ..." and that "... the Appellant's license should be reinstated based on the failure of the Board of Nursing to prove the collective allegations charged in its Complaint; ..." [emphasis supplied].
The nursing board argues that since the Chancellor found that "... the board did meet its burden of proof with regard to [Wilson's] alleged violations of ... Sections 73-15-29(1)(j) and 73-15-29(1)(k) ...", she was required to affirm the decision of the board to revoke Wilson's nursing license.
Although the Board of Nursing, upon a finding that a person is unqualified because of any one of the statutory grounds, is empowered to enter an order imposing one or more of the statutory penalties, the chancellor, under the facts of this case, did not err as a matter of law in viewing the charges collectively as opposed to one out of many. This is because nothing in the record refutes the idea that the board, in its discretion, considered the totality of the charges in imposing the harshest penalty available  revocation of Wilson's nursing license. If the Board of Nursing intended to revoke Wilson's license upon anything less than a finding of guilt on all three charges, it should have so stated in its findings of fact and conclusions of law. Further explication follows.
Miss. Code Ann. § 73-15-29(2) reads, in its pertinent parts, as follows:
(2) When the board finds any person unqualified because of any of the grounds set forth in subsection (1) of this section, it may enter an order imposing one or more of the following penalties:
* * * * * *
(d) Revoking the license or other authorization to practice nursing or practical nursing; ... [emphasis supplied]
We interpret subsection (2) to mean any "one" of the thirteen (13) grounds set forth in subsection (1). This is consistent with § 73-15-29(1)(m) which authorizes the board to revoke a license upon proof that a person has violated "any provision", as opposed to provisions, of chapter 15. The word "any" is defined in Black's Law Dictionary as "Some; one out of many; an indefinite number." Quite clearly, proof of any one violation found in § 73-15-29(1) is sufficient to justify imposition of one or more of the penalties found in § 73-15-29(2), including revocation of license.
*493 The use of the word "may" in § 73-15-29(2) and § 73-15-31(4) affords the Board of Nursing a great deal of discretion in determining the contours of the penalty to impose against a disobedient licensee. The word "may", as utilized in § 73-15-29, imports permission or authorization. We note that during the testimony of Marcella McKay, custodian of records for the Board of Nursing, the board and defense counsel entered into a stipulation "... that after each and every [former] action of the Board, the Board in its discretion reinstated the license of Mr. Wilson." [emphasis supplied].
The board, in its discretion, may enter an order imposing one or more of the statutory penalties listed. Section 73-15-29(2) contains penalties less severe in nature than revocation of one's license. These penalties include administrative reprimands; suspensions; restrictions; mandatory care, counseling, and treatment; mandatory education; supervision, and fines. In short, the Board of Nursing can tailor the punishment to fit the severity of the transgressor's transgression.
In the case at bar, the charges were brought collectively in a three-count complaint. Nothing in the record negates the idea that the Board of Nursing, in imposing the harshest available penalty, relied upon its finding that Wilson was guilty of all three charges. Stated differently, there is no indication in the record the board would have revoked Wilson's license had it found him guilty of only one or two of the charges. Although the board could  and should  have made specific findings of fact and conclusions of law on this point, it did not do so. As stated, if the board intended to revoke Wilson's license on anything less than his guilt of all three charges found in the complaint, it should have said so.
That said, however, it does not follow that the chancellor was correct in ordering that Wilson's license be reinstated. The proper course was a remand to the Board of Nursing for a determination of whether it would order revocation of Wilson's license or some lesser penalty based on the remaining charges. Miss. Real Estate Commission v. White, 586 So.2d 805, (Miss. 1991).

D. Wilson's Cross-Appeal
Six issues are raised in Wilson's cross-appeal.

1. Section 73-15-29(1)(j) and Section 73-15-29(1)(k)
Wilson contends there is no clear and convincing evidence that he engaged in conduct "... that would constitute a crime as defined in Title 97 of the Mississippi Code of 1972 ..." and/or "... engag[ed] in conduct likely to deceive, defraud, or harm the public." We hold the board's findings that Wilson's conduct fell within the purview of sections 73-15-29(1)(j) and 73-15-29(1)(k) was supported by clear and convincing evidence and substantial, credible evidence, respectively.
The complaint lodged against Wilson alleged that certain conduct constituted the crime of false pretenses as defined by Miss. Code Ann. § 97-19-39. Wilson contends the board presented no evidence of his fraudulent intent. We disagree.
"Under M.C.A. § 97-19-39 (1972) and the cases interpreting this section, the crime of false pretenses occurs when one makes a false representation of a past or existing fact with the intent to deceive and with the result that the accused obtains something of value from the party deceived." State v. Allen, 505 So.2d 1024, 1025 (Miss. 1987); See also State v. Hoffman, 508 So.2d 669, 671 (Miss. 1987). An intent to defraud, to be sure, is an essential ingredient of the crime of obtaining money by false pretense. Woodfork v. State, 377 So.2d 912 (Miss. 1979).
The standard of proof required for a decision of the Board of Nursing in cases involving fraud or conduct deemed quasicriminal in nature is clear and convincing evidence. Hogan v. Mississippi Board of Nursing, 457 So.2d 931, 934 (Miss. 1984); Levi v. Mississippi State Bar, 436 So.2d 781, 783 (Miss. 1983). We hold the proof of intent to defraud passes muster under this standard.
It is enough to say the testimony of the employee conflicted with the testimony elicited *494 from Wilson. The employee testified she was asked to pay for her drug screens; Wilson, on the other hand, testified she was making a voluntary donation to the patient trust fund. The testimony, viewed as a whole, was sufficient to establish by clear and convincing evidence that Wilson obtained a check from the employee for $80 made payable to Wilson as payment for drug screens for which there was no charge and that Wilson converted the money to his own use. Wilson freely admitted he endorsed the check, deposited it in his personal account, and never reimbursed the employee. He testified that after he was unable to reach her, he dismissed the whole thing and did not even think of it anymore.
Wilson claimed he had no intent to defraud the employee; rather, his receipt of her check was simply an informal method of reimbursing the hospital for her drug screens. According to Wilson there was no culpability on his part and the entire matter surrounding the check was simply a big misunderstanding.
This same conduct was also conduct "likely to deceive, defraud, or harm the public." We reject Wilson's claim that at the worst he is guilty of nothing greater than an isolated lapse in judgment.
In Newburn v. State, 205 So.2d 260, 265 (Miss. 1967), we talked about intent:
Intent is an emotional operation of the mind, and is usually shown by acts and declarations of the defendant coupled with facts and circumstances surrounding him at the time. Defendant's intention is manifested largely by the things he does. [emphasis supplied].
In Shanklin v. State, 290 So.2d 625, 627 (Miss. 1974), we further opined:

Intent to do an act or commit a crime is also a question of fact to be gleaned by the jury from the facts shown in each case. The intent to commit a crime or to do an act by a free agent can be determined only by the act itself, surrounding circumstances, and expressions made by the actor with reference to his intent. [emphasis supplied]
See also Ryals v. State, 305 So.2d 354, 356 (Miss. 1974), quoting from Newburn, supra; Jackson v. State, 254 So.2d 876, 879 (Miss. 1971).
It is well settled that intent may be shown by circumstances. Hollingsworth v. State, 392 So.2d 515 (Miss. 1981). This is a wise rule of law because, as we stated in Lee v. State, 244 Miss. 813, 146 So.2d 736 (Miss. 1962), the
... criminal intent of a defendant, dwelling in his mind, invisible to the outward sight, can never be proven by direct testimony of a third person, (except when verbally expressed or admitted), and it need not be, because a person is presumed to intend that which he does, or which is the natural and necessary consequence of his act. [Citations omitted] Moreover, the court and the jury are not bound by the evidence of the accused as to what his intention was in the doing of a particular act. [Citations omitted] [emphasis supplied].
A reasonable hypothetical member of the board could have found that Wilson intentionally lied to the employee about the cost of the drug screens and that he intended this falsity to induce her to part with her money, which she did. There is clear and convincing evidence in the record that Wilson possessed the requisite intent to defraud the employee. Accordingly, the chancellor found correctly that the board met its burden of proof with regard to Wilson's violation of § 73-15-29(1)(j) and (k).

2. Due Process
By virtue of Miss. Code Ann. § 73-15-29(2) a nursing license is a revocable privilege. It, much like a license to practice medicine and dentistry, represents a property interest, not a fundamental right. Ramirez v. Ahn, 843 F.2d 864, 867 (5th Cir.1988); Neuwirth, D.D.S. v. Louisiana State Board of Dentistry, 845 F.2d 553, 558 (5th Cir.1988).
Wilson was not denied procedural due process. He was given ample notice of both the time and place of the disciplinary hearing, as well as notice of the specific *495 charges used as a basis for revoking his license. Wilson appeared at the hearing, testified in his own behalf, and was represented by counsel of his own choice. He had an opportunity to present his own witnesses and documentary evidence and to cross-examine witnesses produced by the other side. This satisfies the requirements of both the Mississippi and the United States Constitutions.

3. Open Meetings Act
Wilson claims the Board of Nursing violated the Open Meetings Act codified in § 25-41-1 by declaring an executive session to consider his objection to the hearing and his motion to strike the charges brought under § 73-15-29(1)(h). This argument is devoid of merit because of the "litigation" exception found in § 25-41-7(4)(b) which authorizes a public body to hold executive sessions for the purpose of "[s]trategy sessions or negotiations with respect to prospective litigation, litigation or issuance of an appealable order when an open meeting would have a detrimental effect on the litigating position of the public body."

4. Authentication of Records
Wilson's claim that the board failed to properly authenticate bank and hospital records introduced into evidence is, likewise, without merit. Our statutory, as well as, our case law hold that administrative hearings are not bound by the Mississippi Rules of Evidence or the Mississippi Rules of Procedure.
Section 73-15-31(3) states that the board "... shall not be bound by strict rules of procedure or by the laws of evidence in the conduct of its proceedings, ..." Cf. Merchant v. Pearl Municipal Separate School District, 492 So.2d 959 (Miss. 1986) [School boards proceed informally and are not bound by the Mississippi Rules of Evidence]; Love v. Mississippi State Board of Veterinary Examiners, 230 Miss. 222, 92 So.2d 463 (1956).
A copy of the $80 check was accompanied by a sworn affidavit executed by the President of the Planters Bank in Tunica attesting to the fact that it was, inter alia, a true and correct copy. The employee produced the original check, and there was no harm, no foul, and certainly no prejudice to Wilson. With respect to the hospital records, the sworn affidavit of Sonya Thornhill of the medical record department of the Mississippi State Hospital complied in substance with our statutory requirements.

5. Milhorn's Expert Testimony
Wilson complains that Dr. Milhorn was allowed to give expert testimony based upon his review of four (4) transcripts that had neither been authenticated nor introduced into evidence at the time of his testimony. Marcella McKay, records custodian for the Board of Nursing, authenticated the four transcripts immediately after Wilson testified. Their authenticity has not been assailed on appeal. Wilson himself relies upon portions of their contents. Dr. Milhorn's conclusion that Wilson has had "a long history of problems with drugs" was corroborated by Wilson's admissions during the present hearing as well as Wilson's testimony during the hearings preceding it.
One of Wilson's complaints on appeal is that the Legislature did not define "drug addiction" and "chemical dependency" in § 73-15-29(1)(h). Clinical definitions of both terms were supplied by the expert opinion of Dr. Milhorn whose credentials were impeccable. We cannot agree that the testimony elicited from Milhorn, who was cross-examined at great length, violated Wilson's right to fundamental fairness.

6. Adequacy of Findings of Fact and Conclusions of Law
The order issued by the board setting forth its findings of fact and conclusions of law was adequate. While embellishment may have been preferable, any defect in this regard is certainly not fatal. The board, by virtue of paragraph 3 of its findings, found as a fact that Wilson was addicted to or dependent on alcohol or other habit-forming drugs, primarily cocaine, and that he engaged in conduct constituting a crime and conduct likely to deceive, defraud, or harm the public.
State agencies are not required to make detailed findings of fact. Ultimate fact-finding is sufficient. Mississippi Public Service Commission v. AAA Anserphone, *496 Inc., 372 So.2d 259, 264-65 (Miss. 1979); Illinois Central Railroad Co. v. Jackson Ready-Mix Concrete, 243 Miss. 72, 137 So.2d 542, 546 (1962).

CONCLUSION
For the foregoing reasons the decision of the chancery court is reversed as to the direct appeal and affirmed as to the cross-appeal and this matter is remanded to the Mississippi Board of Nursing for further proceedings.
REVERSED ON DIRECT APPEAL; AFFIRMED ON CROSS APPEAL AND REMANDED TO THE MISSISSIPPI BOARD OF NURSING FOR FURTHER PROCEEDINGS.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, JAMES L. ROBERTS Jr., and SMITH, JJ., concur.
McRAE, J., concurs in part and dissents in part with separate written opinion.
McRAE, Justice, concurring in part/dissenting in part:
I concur in reversing the chancellor; however, I would affirm the Board in revoking Wilson's license. We revoke an attorney's license on less evidence than what was presented on only one of the charges raised, which we have affirmed.