## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CT-00908-SCT

*JUANITA RICKS*

*v.*

*MISSISSIPPI STATE DEPARTMENT OF HEALTH*

## ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 08/02/95 |
| TRIAL JUDGE: | HON. EDWARD C. PRISOCK |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ROGERS J. DRUHET, III |
| ATTORNEY FOR APPELLEE: | LAURA HOGAN TEDDER |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| | (OTHER THAN WORKERS' COMPENSATION) |
| DISPOSITION: | REVERSED AND RENDERED - 8/13/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/3/98 |

## EN BANC.

## WALLER, JUSTICE, FOR THE COURT:

### Introduction

¶1. This matter is before the Court sitting en banc on the petition for writ of certiorari filed by the Mississippi Department of Health, requesting review of the Court of Appeals' decision which reversed and rendered the decision of the Chancery Court of Neshoba County affirming the Mississippi Department of Health's determination that Juanita Ricks' name should be placed on the Nurse's Aide Abuse Registry. The issues raised for review are whether or not the Court of Appeals applied the proper standard of review, and whether or not the Court of Appeals can substitute its own definition of "neglect" for that used by the administering agency, the Mississippi State Department of Health. We conclude that the Court of Appeals did not apply the correct standard of review, and erred in not according deference to the definition of the statute used by the agency chosen to administer it, since the agency's interpretation of the statute was in accordance with the plain meaning thereof.

### Statement of the Case

¶2. The State Department of Health conducted a hearing pursuant to the Mississippi Vulnerable Adults Act, Miss. Code Ann. § 43-47-3 *et seq.* (1993), and determined that Juanita Ricks' name should be placed on the Nurse's Aide Abuse Registry due to the fact that Ricks left Ms. Woodward, an eighty-three year old resident of a nursing home, unrestrained and unattended on a portable toilet room commode, which resulted in a fall and serious injuries to Ms. Woodward. Ricks appealed to the Chancery Court of Neshoba County, which affirmed the State Department of Health. Ricks then appealed to the Court of Appeals, which reversed and rendered based on its determination that although the statutory definition of negligence does not include the word "willful," wilfulness is implied, i.e., negligence must be willful. This inference is in contravention to the interpretation given to the statute by the administering agency, the State Department of Health, and in contravention to the plain meaning on the face of the statute. As the Department of Health notes, this issue is specifically addressed in the Federal Register which states in pertinent part:[1]

**Comment:**

Several commentators thought the proposed definition of "neglect" was too broad and ambiguous. They contend it is necessary to narrow the definition in order not to inundate the system with complaints. ***Some commentators requested that the terms "willful" and "intent" be inserted into the definition to limit the scope of actions that could be considered neglect.***

**Response:**

In order to promote consistency in the survey process, there needs to be a common definition of neglect for a variety of applications. We have, therefore adopted the concept of the definition used in the Older Americans Act, as we explain below. That definition ***does not incorporate the terms "willful" or "intent." While an act of neglect can be intentional, neglect can also occur unintentionally.*** However, we are specifying at § 488.335(e) that a State must not make a finding that an individual has neglected a resident if the individual demonstrates that such neglect was caused by factors beyond his or her control. ***If the inattentiveness is due to factors within that persons control, intentional or unintentional, he or she can be considered to have neglected the resident(s). Therefore, while willfulness and intent may be considered when a State finds that an individual has neglected a resident, we believe the terms "willful" or "intent" should not be included in the definition because neglect can occurr unintentionally.***

**. . . .**

**Comment:**

Other commentators suggested their own State definitions of neglect should suffice in order not to confuse facilities with separate definitions.

**Response:**

As noted earlier, there has been no evidence to suggest that any State definition is preferable to ours. In fact, ***we believe allowing each State definition to stand, as is, would increase confusion among the providers and promote inconsistency from State to State.***

59 Fed. Reg. 56, 120 (1994)(emphasis added).

¶3. The Court of Appeals apparently was unaware of the dialogue contained in the Federal Register and failed to consider the hearings held in conjunction with this matter pursuant to the meaning of the term "neglect."

## Facts[2]

¶4. On June 14, 1993, Ms. Woodward, an extremely fragile 83 year old women fell from a portable toilet in her room in the Neshoba County Nursing Home, and suffered serious injuries as a result of her fall, including fractures to her nasal bone, cheek bone, and to one of her feet. Ms. Woodward is confined to bed, and requires the assistance of one or two people to get her up. It was documented in facility records that she needed restraints at all times when she was up because of her tendency to fall, and two people were required to attend Ms. Woodward when she had to be removed from her bed. She cannot sit up in a chair without being restrained or having some type of mechanical device. Her fall was first categorized as an accident by the Director of the Neshoba County Nursing Home.

¶5. However, the cause of Ms. Woodward's fall was reconsidered nine days later when the daughter[3] of Ms. Woodward's roommate came forward and reported to nursing home officials that Juanita Ricks, a nurse's aide in charge of Ms. Woodward, had left the room when Ms. Woodward, *unrestrained* and *unattended*, fell from a portable toilet.[4] Only when Ms. Tingle came forward was this incident reported to Department of Health Officials. Ann Ricks, a registered nurse with eight years of experience was then appointed to investigate the report of possible neglect in accordance with department regulations, and a hearing was held on October 15, 1993, to determine if Juanita Ricks had neglected Ms. Woodward in violation of Departmental Regulations.

¶6. At the hearing, Ann Ricks, R.N., unrelated to Juanita Ricks, testified as to what Ms. Tingle had reported to her. Ms. Tingle reported that on the day in question, Juanita Ricks left Ms. Woodward's room with Ms. Woodward sitting unrestrained on a portable toilet. While Juanita Ricks was gone from the room, Ms. Woodward fell from the toilet and suffered serious injuries. Ms. Tingle was present in the room at the time of the incident and was visiting with her mother, who was Ms. Woodward's roommate.

¶7. During the course of her investigation, Ann Ricks took a statement from Juanita Ricks. Ricks stated that she did not leave the room, although she did turn her back on Ms. Woodward and moved a few feet away from her for a moment while she was getting the towel. It is undisputed that Ms. Woodward was not restrained when sitting upon the toilet and that Juanita Ricks was at best, a few feet away from her with her back turned, when Ms. Woodward fell.

¶8. Confronted with the conflicting testimony recited above, the investigator for the Mississippi State Department of Health concluded that she could not determine which of the parties (Juanita Ricks or Ms. Tingle) was telling the truth. However, based upon her training and experience, the investigator, Ann Ricks, R. N., unrelated to Juanita Ricks, testified and was of the opinion that under either set of circumstances, Juanita Ricks was guilty of neglect as defined in the department regulations. The basis for the investigator's opinion was that Ms. Woodward was very fragile and prone to fall. She was to be restrained at all times when she was not in her bed. She should have been attended while seated on the portable toilet. At a very minimum, she should have been restrained on the toilet if left

unattended. The investigator also testified that according to the nursing home records, two people were to attend Ms. Woodward when she had to be moved from her bed.

¶9. Juanita Ricks testified at the hearing and was given an opportunity to cross-examine Ann Ricks. She maintained, contrary to the statement of Ms. Woodward's roommate and the daughter of the roommate, Ms. Tingle, who were present when this incident occurred, that she had never left Ms. Woodward's room nor was she ever informed that Ms. Woodward was to be restrained while seated on the portable toilet. She further maintained that while she had attended a program for nurse's aides on the subject of abuse and neglect, she had never been informed of the type of neglect for which she was being held accountable. She also presented other witnesses and a petition supporting her position, signed by numerous third parties.

**I. Petitioner, the Mississippi Department of Health, asserts that the standard of review used by the Court of Appeals is incorrect and that further, the Court of Appeals "created" a definition of neglect for the basis of its opinion which differs from that used by the department, and which differs from the plain and clear language of the statute, as well as from the definition of neglect as explained in the Federal Register.[5]**

**Standard of Review**

¶10. An appellate court's review of a decision of an administrative agency of the State is well established. *See Mississippi State Bd. of Nursing v. Wilson,* 624 So. 2d 485, 489 (Miss. 1993); *Mississippi State Tax Comm'n v. Vicksburg Terminal*, *Inc.*, 592 So. 2d 959, 961 (Miss. 1991); *Mississippi State Tax Comm'n v. Mississippi-Alabama State Fair*, 222 So. 2d 664 (Miss. 1969). This Court has held:

> Our Constitution does not permit the judiciary of this state to retry *de novo* matters on appeal from administrative agencies. Our courts are not permitted to make administrative decisions and perform the functions of an administrative agency. Administrative agencies must perform the functions required of them by law. When an administrative agency has performed its function, and has made the determination and entered the order required of it, the parties may then appeal to the judicial tribunal designated to hear the appeal. ***The appeal is a limited one, however, since the courts cannot enter the field of the administrative agency. The court will entertain the appeal to determine whether or not the order of the administrative agency (1) was supported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party. This rule has been thoroughly settled in this State.***

*Mississippi State Bd. of Nursing v. Wilson*, 624 So. 2d at 489 (quoting *Mississippi-Alabama State Fair*, 222 So. 2d at 665) (emphasis in original).

¶11. "`Moreover, there is a rebutable presumption in favor of the action of an administrative agency and the burden of proof is upon one challenging its action.'" *Wilson*, 624 So. 2d at 489 (quoting *County Bd. of Educ. of Alcorn County v. Parents & Custodians of Students at Rienzi Sch. Attendance Ctr.*, 251 Miss. 195, 205, 168 So. 2d 814, 818 (1964)). Additionally, this Court is bound "`...to give due deference to the factual findings of the administrative agency and to the chancellor who adopted the same findings.'" *Wilson*, 624 So. 2d at 490 (quoting *State Farm Ins. Co. v. Gay*,

526 So. 2d 534, 535 (Miss. 1988)).

**The Board's decision**

¶12. The State Board of Health made a decision, based upon hearing all the evidence, to strike Juanita Ricks from the regulatory "Nurse's Aide Roster" because of her neglect of Ms. Woodward, a nursing home patient under Juanita Ricks' care and supervision.

¶13. The Department of Health found Ricks guilty of "neglect" as defined in Section 43-47-5(k) of the Mississippi Code and defined in the Mississippi State Department of Health Regulations. This State adopted the Mississippi Vulnerable Adults Act in 1986. *See* Miss. Code Ann. § 43-47-3 *et seq.* (1993). The Mississippi State Department of Health was given authority to enact regulations and standards of conduct for nurses and nurses's aides pursuant to § 41-3-17(1993). The term "neglect" is defined in the Mississippi Vulnerable Adults Act as follows:

> "Neglect" shall mean either the inability of a vulnerable adult who is living alone to provide for himself the food, clothing, shelter, health care or other services which are necessary to maintain his mental and physical health, or **failure of a caretaker to supply the vulnerable adult with** the food, clothing, shelter, health care, **supervision** or other services which are necessary to maintain his mental and physical health.

Miss. Code Ann. § 43-47-5(k) (1993)(emphasis added).

¶14. Section I (h) of the Mississippi State Department of Health's Regulations Related to the Removal of Nurse's Aides from the Registry defines "neglect" as follows:

> "Neglect" shall mean the failure to supply the long term care resident with the care, food, clothing, shelter, health care, supervision or other services which are necessary to maintain his mental and physical health.

The pertinent regulation goes on to say:

> [A]ny aide that has been found by the licensing agency to have abused, *neglected*, or misappropriated the property of a long term care resident in his or her care, shall be stricken from the Nurse's Aide Roster. Only the Licensing Agency may strike an aide from the roster due to abuse, neglect, or misappropriation.

*See* Regulations Related to the Removal of Nurse's Aide from the Registry, Mississippi Department of Health, § I (h) (effective December 11, 1990) (emphasis added).

¶15. As previously noted, *supra*, the definition, pursuant to hearings held by the federal government on the pertinent regulations, does not include the word willful.

> That definition does not incorporate the terms "willful" or "intent." **While an act of neglect can be intentional, neglect can also occur unintentionally. . . . If the inattentiveness is due to factors within that person's control, intentional or unintentional, he or she can be considered to have neglected the resident(s). . . . the terms "willful" or "intent" should not be included in the definition because neglect can occur unintentionally.**

59 Fed. Reg. 56130 (1994)(emphasis added).

**¶16.** Yet, the Court of Appeals held:

> . . . There was no evidence of wilful conduct. . . . The offense *requires* wilful conduct, which is exactly what the definition even of neglect also contemplates.

¶17. Without authority cited in support of its decision, the Court of Appeals decided that the statute in issue requires wilful neglect, and a pattern of neglect, when in fact, the statute is interpreted by federal regulations and the health department according to its plain meaning, which is that neglect may be wilful or unintentional. As long as a resident under an aide's supervision is injured through the aide's neglect, or lack of supervision, intentional or not, that aide is guilty of neglect, and subject to removal, by the health department, from the active register and transfer to the Nurse's Aide Abuse Registry.

¶18. Furthermore, there is no doubt that Ms. Woodward was a "vulnerable adult" as defined by the statute, nor is there any doubt that she was a "long term care resident" at the Neshoba County Nursing Home as defined by the pertinent regulations. According to the nursing home records, Ms. Woodward was confined to her bed and required the assistance of two other persons to get out of bed, since she was prone to fall if left unassisted. Moreover, there is no claim that the pertinent Department of Health Regulations exceed the authority granted by the enabling statute. This case involves a straightforward violation of Section I(h) of the Regulations Relating to the Removal of Nurse's Aide from the Registry by the Mississippi Department of Health, pursuant to the decision of its hearing officer. The evidence and investigation shows that Juanita Ricks left Ms. Woodward sitting on a portable room toilet unrestrained and unassisted, which resulted in a fall and serious injuries to Ms. Woodward. This behavior clearly constitutes neglect under the pertinent definition of neglect. Further, there were two witnesses to this behavior, Ms. Woodward's roommate, and the daughter of the roommate, neither of which were in any position to lend assistance to Ms. Woodward, nor was it their responsibility to lend aid to Ms. Woodward.

¶19. The standard of review accorded to administrative agency decisions has not been correctly applied. The Court of Appeals majority apparently viewed the issue of this case as an interpretation of law, and held that: "The point was not raised by either party, but we reverse and render because we find that the statute does not permit the listing of a nurse's aide on the Abuse Registry because of mere negligence." However, this Court has held that unless the Department's interpretation is **repugnant** to the plain meaning thereof, the court is to defer to the agency's interpretation. *Mississippi State Tax Comm'n v. Lady Forest Farms, Inc., 701 So. 2d 294, 296 (Miss. 1997)*. *See also Kerr-McGee Chem. Corp. v. Buelow,* 670 So. 2d 12, 16 (Miss. 1995); *Tower Loan of Mississippi v. Mississippi State Tax Comm'n*, 662 So. 2d 1077 (Miss. 1995); *Mississippi State Tax Comm'n v. Dyer Inv. Co.*, 507 So. 2d 1287, 1289 (Miss. 1987).

¶20. Further, the interpretation given the statute by the agency chosen to administer it should be accorded deference. *Williams v. Puckett*, 624 So. 2d 496, 499 (Miss. 1993); *Gill v. Mississippi Dep't of Wildlife Conservation*, 574 So. 2d 586, 593 (Miss. 1990).

¶21. The definition of neglect is the failure "to supply the vulnerable adult with the... supervision... necessary to maintain [her] mental and physical health." Miss. Code Ann. § 43-47-5(k)(1993). Juanita

Ricks' actions clearly led to the patient's fall and injury from "inattentiveness within the CNA's control." Based upon the clear intent of the federal drafters, and the clear language of the statute, as well as the administering agencies interpretation of the statute and the term "neglect," the Court of Appeals erroneously reversed the decision of the chancellor.

**Issues Raised on Appeal by Juanita Ricks and Not Addressed by the Court of Appeals:**

**I. Was the finding of the hearing officer that Ricks committed neglect arbitrary and capricious?**

¶**22.** "Our standard of review requires that we look to see whether the decision of the Board is supported by substantial evidence, was arbitrary or capricious, was beyond the power of the administrative agency to make, or violated some statutory or constitutional right of the complaining party." *United Cement Co. v. Safe Air for the Env't, Inc* ., 558 So. 2d 840, 842 (Miss. 1990).

¶23. As discussed, *supra*, the evidence clearly establishes that the resident, Ms. Woodward was a frail, elderly patient who could not sit up without someone physically supporting her or without some sort of medical restraint. Juanita Ricks' employment record showed that she had been instructed on previous occasions to get help with patients who needed constant physical support and restraint, yet, Juanita Ricks left Ms. Woodward sitting on a portable room toilet unattended and unrestrained, which resulted in a fall and serious injury. The findings of the Hearing Officer were therefore not arbitrary and capricious, and were supported by the manifest weight of the evidence. This issue is without merit.

**II. Did the agency's failure to comply with the reporting requirements of the Vulnerable Adults Act deprive the agency of authority to place Ricks' name on the Nurse's Aide Abuse Registry?**

¶24. Ricks claims that the State Department of Health had to refer this matter to the District Attorney for prosecution. The State replies that a valid regulation providing for hearings on accusations of abuse by certified nurse aides was in effect at the time of the incident and was controlling at the time of the hearing. Therefore, the agency was not required to present reported abuse to the district attorney for criminal prosecution. Ricks mistakenly refers to a regulation that did not become effective until May 14, 1994. The old regulation was in effect on October 15, 1993, which was the date of the hearing. This issue is without merit.

**III. Did the hearing officer deny Juanita Ricks the opportunity for a fair hearing by limiting cumulative testimony?**

¶**25.** Ricks complains that she was not afforded the opportunity for a hearing, in that the hearing was limited to 45 minutes. The Health Department responds that Ricks did not raise this issue at the hearings or during appeal to the lower court, and is procedurally barred from raising it for the first time upon appeal to this Court. *Ponder v. State*, 335 So. 2d 885, 886 (Miss. 1976). Further, Ricks does not assert that there is any piece of evidence which she was not allowed to present which would have affected the outcome of the hearing, and therefore, she has not shown that she was prejudiced by any actions taken by the hearing officer. In fact, at the close of the hearing, the Hearing Officer asked Ricks if there was any additional evidence she wished to present, to which she replied, "That's

it." This issue is without merit.

## IV. Did the Agency comply with the requirements of the Administrative Procedures Act?

¶26. The Mississippi Vulnerable Adults Act of 1986, Miss. Code Ann. § 43-47-3 *et seq.*(1993)*,* designates the Mississippi State Department of Health and the Medicaid Fraud Unit as the agencies to which abuse of vulnerable adults must be reported. The agency Administrative Hearing is held pursuant to Federal Regulations contained at Vol. 56, No. 187, of the Federal Register, September 26, 1991. Due process in an administrative setting requires notice and a meaningful opportunity to be heard, both of which were afforded to Juanita Ricks. Ricks availed herself of every appeal and was never denied an opportunity to be heard. There is no evidence that the Mississippi Department of Health deviated in any fashion from any of the requirements in this matter. This issue is without merit.

### Conclusion

¶27. Because the Court of Appeals did not adhere to the proper standard of review, and further, on its own initiative, found that neglect must be wilful or intentional, in clear contradiction to the plain language of the statute, the interpretation of the statute used by the administering agency, and the interpretation placed upon the pertinent statute in the Federal Register, the decision of the Chancery Court of Neshoba County is affirmed, and the decision of the Court of Appeals is reversed and rendered.

**¶28. REVERSED AND RENDERED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**

1. The laws and regulations in question for the State of Mississippi were mandated and developed by the United States government as requirements to be met in order for nursing homes to participate in medicare/medicaid programs. These statutes and regulations did not come about without hearings and review by numerous governmental agencies, the United States Congress, interested parties and the fifty states. These hearings and regulations resulted from the Omnibus Budget Reconciliation Act of 1987 (as amended), and rules promulgated by the United States Department of Health and Human Services, Health Care Financing Administration. Afterward, our Legislature and Department of Health developed this State's statutes and regulations based upon the federal guidelines.

2. The facts recited here are taken from the record and from the dissenting opinion of the Court of Appeals written by Judge Herring and joined by Chief Judge Bridges.

3. Identified as Ms. Tingle in the record.

4. Juanita Ricks, age unknown, had, according to the brief of the appellant, worked as a nurse's aide at the Neshoba County Nursing Home for twenty years. The record does not show if Juanita Ricks worked at another facility prior to her employment with the Neshoba County Nursing Home.

5. Much of the analysis used is taken from Judge Herring's dissenting opinion, joined by Chief Judge Bridges.