**COLORADO STATE BOARD OF NURSING, Petitioner–Appellee,**

v.

**Fred LANG, Respondent–Appellant.**

**No. 91CA0114.**

Colorado Court of Appeals,
Div. IV.

June 18, 1992.

Rehearing Denied Aug. 6, 1992.

Certiorari Denied Jan. 4, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Kathie A. Clinton, Asst. Atty. Gen., Denver, for petitioner-appellee.

Patricia A. Coan, P.C., Patricia A. Coan, Denver, for respondent-appellant.

Opinion by Judge MARQUEZ.

Respondent, Fred Lang, appeals the order of the Colorado State Board of Nursing (Board) revoking his licenses to practice professional and practical nursing. We affirm in part, reverse in part, and remand for further proceedings.

Respondent's license to practice practical nursing lapsed on July 1, 1978. His license to practice professional nursing was first revoked on November 20, 1981. Respondent was on probation at that time for having taken narcotic drugs from a hospital and administering them to himself. Pursuant to a stipulation, respondent admitted that, during the pendency of that probation and while employed as a professional nurse at a different hospital, he took narcotics belonging to the hospital for his own use and benefit.

On March 26, 1987, respondent's professional nursing license was reinstated. However, respondent later admitted violating the 1981 stipulation by failing to obtain *random* urine screens and by having his wife monitor his urine samples. In August 1988, respondent entered into another stipulation agreeing to the suspension of his license for at least six months. It contained the following provision:

> This Stipulation and Order shall become an Order of the Board when accepted by the Board and signed by an authorized Board member.

Under the signature line for the Board member there appeared the terms "Effective Date:" with blank lines to enter a day and month of 1988.

On August 16, 1988, an assistant attorney general representing the Board wrote a letter to respondent's counsel stating that she had forwarded the stipulation to a board member for signature and "the effective date of the stipulation should be within the next few days." On the same day, the stipulation and order was signed by a member of the Board. It was undisputed that respondent ceased working as a professional nurse on August 20, 1988, and that he did not receive the fully-executed stipulation until August 26, 1988.

The present charges against respondent arose from his care and treatment of three patients on August 17 and 18, 1988. Alleging inconsistencies in charting, including assertions that those patients had not received narcotic analgesics as charted by respondent, the Board brought the following charges against him: (1) practicing as a professional nurse during a period when his license had been suspended, (2) negligently or willfully practicing nursing in a

manner which failed to meet generally accepted standards for such nursing practice and falsely or negligently making incorrect entries or failing to make essential entries on patient records, and (3) diverting meperidine (Demerol) to his own possession and being addicted to or dependent on habit-forming drugs or an habitual user of controlled substances.

Pursuant to respondent's motion for summary disposition, the Administrative Law Judge (ALJ) dismissed the first charge against him, ruling that respondent's suspension was not effective until he received notice that the Board had accepted the stipulation and order.

Following hearing conducted pursuant to §§ 12–38–120, C.R.S. (1991 Repl.Vol. 5B) and 24–4–105, C.R.S. (1988 Repl.Vol. 10B), the ALJ found that, as to the second charge, respondent did obtain and record the administration of Demerol to two patients to whom that drug had not been administered. He also found that respondent was not, as of the time of hearing, the time of filing of the notice of charges, or any other time material to the proceeding, addicted to or dependent on Demerol or any other habit-forming drug. The ALJ concluded that, based on the second charge, respondent's license to practice nursing should be permanently revoked.

On review, the Board reversed the ALJ's dismissal of the first charge, adopted his findings of fact and conclusions with regard to the second charge, but set aside the ALJ's conclusion that the respondent was not addicted to or dependent upon Demerol or any other habit-forming drug at the time of hearing. The Board revoked respondent's license to practice professional nursing and license to practice as a practical nurse.

## I.

Respondent initially contends that the Board acted arbitrarily and capriciously and exceeded its jurisdiction in finding that he practiced nursing while his license was suspended. Asserting a violation of his rights to due process, respondent argues that, as a matter of law, he was not re-quired to comply with the stipulation and order until he received notice that the Board had accepted and signed it. We conclude that the Board erred in reversing the ALJ's dismissal of this charge.

The Board, noting that the stipulation was effective August 16, 1988, concluded that respondent had violated § 12–38–123(1)(c), C.R.S. (1991 Repl.Vol. 5B) which makes it unlawful for any person to practice as a practical or professional nurse during the period when his license has been suspended or revoked. The Board observed that that section of the statute contains no requirement of notice concerning a stipulation and order for suspension, nor does it require any specific intent to be proved regarding working after a suspension. The Board further concluded that, by practicing as a professional nurse on August 17 and 18, 1988, respondent had demonstrated grounds for discipline under § 12–38–117(1)(e), C.R.S. (1991 Repl.Vol. 5B) by violating a provision of that article and had violated the Board's order of suspension in contravention of § 12–38–117(1)(g), C.R.S. (1991 Repl.Vol. 5B). The latter section provides that the Board has the power to suspend any license on proof that such person has negligently or wilfully violated any order, rule, or regulation of the Board pertaining to nursing practice or license.

Here, respondent submitted an affidavit with his motion for partial summary judgment in which he stated that he signed the stipulation sometime between August 8 and August 11, 1988.

The affidavit also stated that respondent had a conversation with an assistant attorney general for the State Board of Nursing at some time between August 8 and August 20, 1988, and that during that conversation respondent specifically asked the assistant attorney general what the effective date of his license suspension would be and that he "was told that it would be when I receive notice."

Also, an exhibit to the motion for summary judgment was a letter dated August 11, 1988, from respondent's counsel to the

attorney general's office forwarding the proposed stipulation. The letter included a statement that: "As soon as I've received notice from you that the suspension is in effect, Mr. Lang will forward his professional nurse license to the Board." Another exhibit, a letter dated August 16, 1988, from the attorney general's office to respondent's counsel indicated that: "The effective date of the stipulation should be within the next few days." Although respondent ceased practicing professional nursing August 20, 1988, he did not receive notice that the stipulation had been signed until August 26, 1988.

The Board's response to the motion for summary judgment included a copy of the fully executed document indicating that it had been signed on August 16, 1988, a copy of the letter dated August 11, 1988, from respondent's counsel to the attorney general's office, a letter indicating dates respondent worked during August 1988, and exhibits pertaining to other issues. However, the response contained no affidavit or other material refuting the statements allegedly made by the attorney general's office concerning notice.

■ Once a party moving for summary judgment has met its initial burden of production, the burden shifts to the non-moving party to establish that there is a triable issue of fact. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988).

■ The essence of procedural due process is fundamental fairness. This embodies adequate advance notice and an opportunity to be heard prior to state action resulting in deprivation of a significant property interest. *City & County of Denver v. Eggert*, 647 P.2d 216 (Colo.1982).

Section 24–4–104(10), C.R.S. (1988 Repl. Vol. 10A) provides:

Written notice of the revocation, suspension, annulment, limitation, or modification of a license and the grounds therefore shall be served forthwith on the licensee personally or by mailing by first-class mail to the last address furnished the agency by the licensee.

In our view, the administrative procedure act ordinarily requires notice before suspension of a license would be effective. Here, the terms of the stipulation which indicate that it "shall become an Order of the Board when accepted by the Board and signed by an authorized Board member" do not eliminate a requirement for notice.

Further, the correspondence exchanged in connection with the stipulation, the unrebutted statement that the attorney general had advised respondent that the effective date of the license suspension would be when he received notice, and the hearing officer's finding that respondent had accepted single-shift assignments before he knew the suspension had become effective, reinforce the concept that, under these circumstances, due process required that respondent be provided notice that the stipulation had been accepted before he could be charged with a violation of the terms of that stipulation.

Accordingly, we conclude that the Board's order on this issue is both contrary to the evidence and contrary to law and must therefore be set aside. Section 24–4–106(7), C.R.S. (1988 Repl.Vol. 10A).

## II.

■ Respondent next contends that the substantial evidence in this case does not support the conclusion that he diverted Demerol for his own purposes and, consequently, that such diversion cannot properly be the basis for discipline. He submits that the evidence concerning his failure to administer medication, standing alone, is insufficient to support the ALJ's conclusion that he improperly diverted Demerol for his own purposes. We disagree.

■ Whether there is substantial evidence to support an agency's decision is a question of law, and in resolving that question of law, a reviewing court must view the record in a light most favorable to the agency decision. *Ace West Trucking, Inc. v. Public Utilities Commission*, 788 P.2d 755 (Colo.1990).

■ The agency, not the reviewing court, has the task of weighing the evi-

dence and resolving any conflicts. *Board of Assessment Appeals v. Arlberg Club,* 762 P.2d 146 (Colo.1988). Also, if the inferences to be drawn from the evidence are conflicting, the agency's choice between two fairly opposing views may not be replaced by a reviewing court. *Walton v. Banking Board,* 36 Colo.App. 311, 541 P.2d 1254 (1975).

Here, there was evidence that respondent checked out and assumed control over dosages of Demerol for two patients. There was also evidence that the patients did not receive certain of those dosages which respondent entered on their charts or otherwise claimed to have administered. In our view, this evidence properly supports the ALJ's finding that respondent diverted the Demerol to his own purposes.

## III.

■ We agree, however, with respondent's contention that the Board exceeded its jurisdiction in finding that he was "presently" addicted to or dependent upon Demerol.

As one of the grounds for discipline, the Board asserted that, in violation of § 12–38–117(1)(i), C.R.S. (1991 Repl.Vol. 5B), respondent:

> Is addicted to or dependent on alcohol or habit-forming drugs or is a habitual user of controlled substances, as defined in section 12–22–303(7), or other drugs having similar effects....

In *State Board of Nursing v. Crickenberger,* 757 P.2d 1167 (Colo.App.1988), a panel of this court held that this language "requires that the addiction or dependency must be proven to exist at the time of the hearing in order to be the source of a disciplinary action."

Hearings by the Board concerning discipline of nurses are conducted pursuant to § 24–4–105, C.R.S. (1988 Repl.Vol. 10A). Sections 12–38–108(1)(h) and 12–38–120, C.R.S. (1991 Repl.Vol. 5B). The findings of evidentiary fact, as distinguished from ultimate conclusions of fact, made by the Administrative Law Judge or the hearing officer may not be set aside by the agency on review of the initial decision unless such findings of evidentiary fact are contrary to the weight of the evidence. Section 24–4–105(15)(b), C.R.S. (1988 Repl.Vol. 10A).

Findings of ultimate facts, as distinguished from evidentiary facts, are conclusions of law, or at least mixed questions of law and fact, and settle the rights and liabilities of the parties. Findings of evidentiary facts involve the raw, historical data underlying the controversy. *Puls v. People ex rel. Woodard,* 722 P.2d 424 (Colo.App.1986).

Here, at the administrative hearing for respondent in early February 1990, an expert in the area of substance abuse, testified that respondent met at least five of the criteria in the Diagnostic and Statistical Manual of Mental Disorders (3d ed. rev. 1987) (DSM–III–R) which indicated to him a diagnosis of substance dependency. Based on the DSM–III–R and other materials, it was the expert's opinion that respondent is an "opioid dependent person in full remission."

The Board set aside the ALJ's conclusion that respondent was not addicted to or dependent on Demerol or any other habit-forming drug on the basis that it was contrary to the evidence presented at the hearing. The Board made specific conclusions based on the testimony of the expert at the hearing that respondent demonstrates:

> (A) Diagnostic criteria for substance dependence from the DSM III–R, particularly, the second criteria concerning efforts to control use, the third criteria concerning the time spent in obtaining a substance, the fourth criteria concerning intoxication, the fifth criteria concerning not meeting certain responsibilities, the sixth criteria concerning continued use despite adverse consequences, and the seventh criteria concerning tolerance development,
>
> (B) further criteria of addiction or dependence including compulsion to use the substance, loss of control, and continued use despite adverse consequences, [and]
>
> (C) additional addictive behaviors including lying, manipulating, and drug seeking behaviors.

The expert's opinion, however, must be considered in light of his entire testimony. He also testified that respondent was not currently addicted to or dependent upon any drug and that he was not currently an habitual user of any habit-forming drug. He defined full remission to mean "that there has been no use over the last six months or if there has been use there has been no symptoms of that use." The expert also stated that the criteria he used to diagnose respondent were based on respondent's history of drug use prior to 1981 and that he had no reason to believe that respondent had relapsed. Also, evidence that respondent had not used Demerol or any other controlled substances since at least mid-September 1988 was undisputed.

After the hearing, the ALJ found that the board had not proved that respondent has used or abused Demerol, or any other controlled substance or habit-forming drug, since the latter part of 1980. The ALJ also found that there was no evidence that respondent, at any time since regaining his license or other time material to this matter, including August 1988 and the time of the hearing, had or exhibited any of the symptoms of substance dependence listed in the DSM–III–R.

Thus, here, not unlike *Crickenberger, supra*, the evidence supports the ALJ's findings of evidentiary fact that respondent had not used habit-forming drugs for a substantial period of time and was not an habitual user of controlled substances at the time of the hearing.

Since there is substantial evidence in the record as a whole to support the ALJ's findings of evidentiary fact in this regard, they may not be set aside by the Board. *See* § 24–4–105(15)(b), C.R.S. (1988 Repl. Vol. 10A); *Puls v. People, supra*. Thus, the Board's ruling in this regard cannot stand.

### IV.

■ Respondent next asserts that the sanction of permanent revocation of his license because of his admitted charting errors is so out of proportion to the offense proved as to be arbitrary, capricious, and an abuse of discretion. In view of our rulings above, we conclude that remand is necessary to allow the Board to reconsider the sanction imposed.

■ The Board is provided wide discretion in its determination of the appropriate sanctions for violations of the Nurse Practice Act, and its determination should be upheld on review unless it bears no relation to the conduct, is a gross abuse of discretion, or is manifestly excessive in relation to the needs of the public. *See Colorado Board of Medical Examiners v. Reiner*, 786 P.2d 499 (Colo.App.1989); § 12–38–117, C.R.S. (1991 Repl.Vol. 5B). Since the sanction here imposed was based on violations that we have concluded are not sustainable, it must be reconsidered.

### V.

■ Finally, we find no merit in respondent's contention that the Board was arbitrary, capricious, abused its discretion, and failed to follow the provisions of C.R.C.P. 37 in imposing a sanction upon him twice for his therapist's refusal to disclose certain medical records.

Prior to hearing, the parties engaged in a discovery dispute concerning documents in the possession of one of respondent's endorsed witnesses, a therapist who had been engaged in treating respondent. When respondent refused to authorize production of the documents, the Board filed a motion to compel discovery. In response to that motion, the ALJ struck the therapist's name from the list of witnesses and ordered that she not be permitted to testify. The ALJ also awarded costs and fees to the Board in the amount of $550.35. In the final agency order, the Board affirmed the ALJ's decision and ordered respondent to pay the $550.35.

Division of Administrative Hearings Rule 8, 1 Code Colo.Reg. 104–1, specifically makes C.R.C.P. 26 through 37 concerning discovery applicable to proceedings before the Division to the extent practicable.

C.R.C.P. 37(a)(1) provides that if a deponent fails to answer a question or if a party, in response to a request for inspec-

tion, fails to respond, or fails to permit inspection as requested, then the discovering party may move for an order compelling discovery.

C.R.C.P. 37(a)(3) provides that:

If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

On appeal, respondent appears to base his argument on three grounds: (1) he was not the party in noncompliance and had no way to force the therapist into complying with the ALJ's order; (2) C.R.C.P. 37 and C.R.C.P. 12 require notice and an attempt to resolve the issue prior to filing the motion to compel which the Board failed to do; and (3) respondent had substantial justification for opposing the motion to compel because the substantive treatment notes were irrelevant to the issues in the case, the questionable compliance of a very broad medical release information with federal regulations, and the fact that the noncomplying person was not the respondent.

As to respondent's first contention, he was the party whose conduct necessitated the motion. At the deposition, the therapist produced a release which respondent had signed ten days earlier which allowed her to release only information about his urinalysis record and a progress report. Several times during the deposition, the therapist refused to answer questions or limited her answers on the basis of confidentiality.

Respondent's second claim is unsupported by factual or legal argument, so we decline to consider it on appeal. C.A.R. 28(a)(4). *See Mauldin v. Lowery*, 127 Colo. 234, 255 P.2d 976 (1953).

Third, because respondent endorsed the therapist as a witness, we cannot accept his contention that her substantive treatment notes were irrelevant. The purposes of pretrial discovery include elimination of surprise at trial, *discovery* of relevant evidence, .and simplification of issues. *Hawkins v. District Court*, 638 P.2d 1372 (Colo. 1982). Indeed, it is the "questionable compliance of a very broad [medical] release with federal regulations" that is irrelevant to this issue.

We, therefore, find that respondent did not have substantial justification for opposing the motion to compel discovery. Thus, the Board did not act arbitrarily or capriciously, or abuse its discretion in upholding the discovery sanction and award of costs and fees.

The order is affirmed in all respects except as to the findings that respondent violated the Board's order by practicing nursing when his license was suspended, that he is presently addicted or dependent on habit-forming drugs, and as to the disciplinary sanction imposed, and the cause is remanded for further consideration of the appropriate disciplinary sanction.

CRISWELL and DUBOFSKY, JJ., concur.