20CA0962 Bd of Nursing v Fresques 01-06-2022 COLORADO COURT OF APPEALS Court of Appeals No. 20CA0962 Colorado State Board of Nursing No. NB 2019-0023 Colorado Board of Nursing, Petitioner-Appellee, v. Donald J. Fresques, R.N., A.P.N., Respondent-Appellant. ORDER REVERSED Division VII Opinion by JUDGE PAWAR Navarro and Grove, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced January 6, 2022 Philip J. Weiser, Attorney General, Keenan E. Lorenz, Senior Assistant Attorney General, Denver, Colorado, for Petitioner-Appellee Spencer Fane LLP, Ellen Elizabeth Stewart, Troy R. Rackham, Denver, Colorado, for Respondent-Appellant 
 1 ¶ 1 Respondent, Donald. J. Fresques, appeals the ruling of the Colorado Board of Nursing (Board) that his prescriptive license is and always has been limited to pediatrics. We conclude that Fresques did not receive adequate notice of the grounds on which the Board limited his prescriptive license. We therefore conclude that Fresques was deprived of procedural due process and reverse the portion of the Board’s order limiting his prescriptive license. The remaining portion of the Board’s order is not before us and is therefore unaffected by this opinion. I. Background ¶ 2 A nurse practitioner is one type of advanced practice nurse (APN). § 12-255-111(2), C.R.S. 2021. A registered nurse can become licensed as an APN if the nurse meets certain additional training and experience requirements. Id. Once registered as an APN, the nurse may then apply for a license to prescribe medication. § 12-255-112(1), C.R.S. 2021. The requirements for obtaining prescriptive authority are in addition to those required for APN registration and are found in a separate statute. Id. ¶ 3 Fresques obtained his APN license in 1999 and his prescriptive authority in 2000. Since then, the requirements for 
 2 obtaining those credentials have changed. Under the new regulatory scheme, both the APN license statute and the prescriptive authority statute contain exemption clauses that allow nurses who obtained their credentials when Fresques did to retain them without fully complying with the updated requirements. § 12-
38-111.5(4), C.R.S. 2018 (APN license exemption clause); § 12-38-
111.6(4.5)(c), C.R.S. 2018 (prescriptive authority exemption clause).
1 At issue in this case is the scope of Fresques’ APN license and prescriptive authority under those exemption clauses. ¶ 4 At the time Fresques obtained his APN license and prescriptive authority, he was practicing in pediatrics. In the twenty years since then, he has practiced in orthopedics, family medicine, and urgent care. In 2010, he started his current job working at a private multidisciplinary practice where he specializes in adult pain management. ¶ 5 In 2019, an inquiry panel of the Board (the panel) decided that Fresques was practicing outside the scope of his APN license. The 1 The “new regulatory scheme” refers to the 2018 statutes and regulations applicable here. We recognize that the statutes and regulations have been amended since then, but those amendments are inapplicable to this case. 
 3 panel issued a cease and desist order stating that Fresques must stop providing APN care to adults. The order alleged that under section 12-38-111.5, C.R.S. 2018, the APN license statute in effect at the time, Fresques’ APN license was limited to pediatrics and he was therefore not allowed to provide APN care to non-pediatric patients. The record contains no indication that Fresques has ever provided substandard care — in fact, the record is replete with evidence that Fresques has always practiced in exemplary fashion. ¶ 6 Later in 2019, the panel filed a notice of charges (effectively a charging document) in the Office of Administrative Courts. The notice contained a single count, which alleged that Fresques’ APN license was limited to pediatrics and therefore did not authorize him to treat adults. The panel brought the single count under section 12-38-111.5, C.R.S. 2018, the APN license statute, and did not allege a violation of section 12-38-111.6, C.R.S. 2018, the prescriptive authority statute. ¶ 7 Fresques answered the panel’s single count, and he and the panel each filed motions for summary judgment. A hearing was held shortly after the parties moved for summary judgment, but the administrative law judge (ALJ) cut it short when it became clear 
 4 that the facts were undisputed and the only disagreement between the parties was a pure question of law: was Fresques’ APN license limited to pediatrics. Indeed, when it cut off the hearing, the ALJ ordered the parties to submit written arguments “concerning the legislative history of section 12-38-111.5,” the APN license statute. At no point did the panel argue that even if Fresques’ APN license was not limited to pediatrics under section 12-38-111.5, his prescriptive authority was so limited under section 12-38-111.6. And the ALJ did not request briefing on that question. ¶ 8 The ALJ decided the case on summary judgment. She ruled in favor of Fresques on the single count alleged in the notice of charges: Fresques’ APN license was not limited to pediatrics when he obtained it in 1999 and the new APN license statute’s exemption clause allowed him to retain that broad license and continue to provide APN care to adults. However, the ALJ ruled against Fresques on a count not specifically alleged in the notice of charges. The ALJ held that Fresques’ prescriptive authority was limited to pediatrics when he obtained it under section 12-38-111.6, C.R.S. 1999. According to the ALJ, although the new prescriptive authority statute’s exemption clause allowed Fresques to retain his 
 5 prescriptive authority, that authority had only ever applied to pediatrics and that limitation did not change. Based on this analysis, the ALJ affirmed the panel’s cease and desist order with the modification that it applied only to his prescriptive authority, not his APN license. In effect, the ALJ affirmed a new cease and desist order stating that Fresques can practice as an APN outside of pediatrics but can prescribe only within pediatrics. ¶ 9 Fresques and the panel each filed exceptions to the ALJ’s ruling. Fresques argued that (1) any challenge to his prescriptive authority based on the prescriptive authority statute was not properly raised and (2) the ALJ erred by holding that his prescriptive authority was limited to pediatrics. The panel argued that the ALJ erred by holding that Fresques was allowed to practice as an APN outside of pediatrics. The Board adopted the ALJ’s ruling as a final agency order without any modifications or additional substantive explanation. ¶ 10 Only Fresques appeals. He urges us to reverse the Board’s order for two reasons: (1) he did not receive notice of the added count ultimately affirmed by the Board and was therefore deprived of procedural due process; and (2) the Board incorrectly interpreted 
 6 the applicable law in limiting his prescriptive authority to pediatrics. We agree with Fresques’ first argument and therefore reverse without addressing the second. II. Fresques was Deprived of Procedural Due Process ¶ 11 Fresques argues that he was deprived of procedural due process because he was given notice only that the Board sought to limit his APN license under section 12-38-111.5, C.R.S. 2018 — he was not given notice that the Board also sought to limit his prescriptive authority under section 12-38-111.6, C.R.S. 2018. We review this argument de novo, see Klingsheim v. Cordell, 2016 CO 18, ¶ 14, and agree with Fresques. A. Procedural Due Process and Notice ¶ 12 “The essence of procedural due process is fundamental fairness,” a component of which is “advance notice and an opportunity to be heard prior to state action resulting in deprivation of a significant property interest.” Colo. State Bd. of Nursing v. Lang, 842 P.2d 1383, 1386 (Colo. App. 1992). ¶ 13 The General Assembly has made clear exactly what kind of advance notice is required in a proceeding like this one. Section 12-38-116.5(15)(a), C.R.S. 2018, requires that cease and desist 
 7 orders like the one here “set forth the statutes and rules alleged to have been violated [and] the facts alleged to have constituted the violation.” Additionally, any hearing held on allegations in a cease and desist order must comport with sections 24-4-104 and -105, C.R.S. 2021. And section 24-4-104(3)(a) provides that an agency may not revoke, suspend, annul, limit, or modify a license “unless, before institution of agency proceedings therefor, the agency has given the licensee notice in writing of objective facts or conduct . . . that may warrant such action and afforded the licensee opportunity to submit written data, views, and arguments with respect to the facts or conduct.” B. No Notice at the Pleading Stage ¶ 14 The cease and desist order Fresques received from the panel contained no mention of section 12-38-111.6 or prescriptive authority. Instead, it focused exclusively on whether Fresques’ APN license extended beyond pediatrics under section 12-38-111.5. And it ordered him to stop “providing advanced practice care and treatment to patients outside of the pediatric population focus . . . until such time that Respondent is listed on the advanced practice registry with a population focus that allows treatment of patients 
 8 outside of the pediatric population focus.” The order provided no notice of the count the Board ultimately affirmed: that Fresques’ prescriptive practice was outside the scope of that authorized by section 12-38-111.6. As to this count, the cease and desist order clearly violated section 12-38-116.5(15)(a)’s notice requirements. ¶ 15 The panel’s notice of charges was similar. The single charge was “Unauthorized Practice of Advanced Practice Nursing.” There was no charge specific to Fresques’ prescriptive authority. The notice of charges contained an entire section spanning six pages reproducing all the “relevant provisions” of Colorado statute and regulation in their entirety. Section 12-38-111.5 and numerous other provisions relevant to obtaining an APN license were included. Section 12-38-111.6 and its associated regulations were not. Nor was any other provision related to the requirements for obtaining prescriptive authority. ¶ 16 The only two references to prescriptive authority in the notice of charges were in passing. First, the relevant provisions included section 12-38-103(8.5)(b), C.R.S. 2018, which provided that “‘[p]ractice of advanced practice nursing’ includes prescribing 
 9 medications as may be authorized pursuant to section 12-38-
111.6.” ¶ 17 Second, the factual allegations merely repeated this definition. They went on to state that Fresques obtained his APN license in 1999 and recounted the nature of his practice since that time, which included providing APN care to adults. Significantly, the factual allegations did not mention when or if Fresques obtained prescriptive authority, nor did they allege that Fresques had been prescribing medication to any patients, pediatric or otherwise. C. No Notice During Litigation Before the ALJ ¶ 18 When the parties filed their simultaneous motions for summary judgment, Fresques made clear that, as he understood it, his prescriptive authority was not being independently challenged. In his motion for summary judgment, he wrote: “There is no claim in this case that Respondent did not adhere to the requirements for prescriptive authority under C.R.S. § 12-38-111.6.” ¶ 19 The first time section 12-38-111.6 and prescriptive authority surfaced in any substantive manner was in the panel’s summary judgment motion. But even then, the panel raised prescriptive authority only to support its APN license argument. The panel’s 
 10 argument on summary judgment was that section 12-38-111.5 has always limited the scope of an APN’s practice to the population they served at the time they successfully applied for the license. The panel supported this interpretation of the APN license statute by arguing that the prescriptive authority statute contained a similar and independent limitation. At no point in its summary judgment filings did the panel argue that even if Fresques’ APN license allowed him to care for adults, his prescriptive authority was nevertheless limited to pediatrics. ¶ 20 At the hearing, the ALJ further indicated that the only relevant issue was the scope of Fresques’ APN license, not the scope of his prescriptive authority. As mentioned above, when she abandoned the hearing, the ALJ ordered the parties to submit written briefs on a single legal issue: the legislative history of section 12-38-111.5 and whether, based on that history, Fresques’ APN license was limited to pediatrics. ¶ 21 After receiving the parties’ briefs and considering them with the summary judgment filings, the ALJ ruled that Fresques’ APN license was not limited to pediatrics under section 12-38-111.5. But the ALJ did not stop there. Instead, she sua sponte conducted 
 11 a comprehensive analysis of section 12-38-111.6 to conclude that even though Fresques’ APN license was not limited to pediatrics, his prescriptive authority was. ¶ 22 In sum, before the ALJ issued her ruling, neither the panel nor the ALJ indicated that Fresques’ prescriptive authority might be limited under section 12-38-111.6, independent of any limitation to his APN license under section 12-38-111.5.
2 The cease and desist order and the notice of charges did not notify Fresques of this possibility. Nor did any argument presented to the ALJ. This violated section 12-38-116.5(15)(a), section 24-4-104(3)(a), and Fresques’ right to procedural due process. D. The Board’s Arguments to the Contrary are Unpersuasive ¶ 23 Initially, we recognize that had Fresques’ APN license been limited to pediatrics, his prescriptive authority would have also been limited to pediatrics. After all, prescriptive authority is a component of practicing as an APN. But that would have limited Fresques’ prescriptive authority based on the application of section 12-38-111.5 and the APN license rules. At no point prior to the 2 The Board conceded this point during oral arguments. 
 12 ALJ’s ruling was Fresques notified that his prescriptive authority was being independently challenged under section 12-38-111.6. And section 12-38-116.5(15)(a) explicitly requires that a respondent receive notice of “the statutes and rules alleged to have been violated.” ¶ 24 We are unpersuaded by the Board’s additional arguments that any lack of notice does not require reversal. First, the Board argues that whether Fresques’ prescriptive authority was limited by section 12-38-111.6 was tried by implied consent. The Board points to the fact that Fresques failed to object to witness testimony and other evidence related to prescriptive authority and section 12-38-111.6. True, the summary judgment evidence included Fresques’ application for prescriptive authority and the letter granting him the same. And the panel’s medical expert testified about the rules for obtaining prescriptive authority. But the ALJ ultimately abandoned the hearing because she determined that such evidence was irrelevant to the sole and purely legal issue before her: was Fresques’ APN license limited to pediatrics under section 12-38-
111.5. We therefore cannot say that Fresques impliedly consented 
 13 to litigating the scope of his prescriptive authority independently from the scope of his APN license. ¶ 25 Second, the Board argues that any lack of notice was harmless because it “did not diminish Mr. Fresques’ opportunity to challenge the [panel’s cease and desist order].” The record belies this argument. Fresques certainly had a fair opportunity to challenge the original cease and desist order he received from the panel — the order that focused exclusively on limiting his APN license under section 12-38-111.5. But the cease and desist order as modified by the ALJ was completely different. Rather than limiting his APN license under section 12-38-111.5, it limited his prescriptive authority under section 12-38-111.6. Before the ALJ, Fresques had no opportunity to challenge the grounds of the order as modified by the ALJ. ¶ 26 Third, the Board argues that procedural due process and section 24-4-104(3)’s requirement of notice and process are inapplicable here because neither the panel nor the Board ever sought to revoke, suspend, annul, limit, or modify his prescriptive authority. Instead, according to the Board, it only sought to stop Fresques from exceeding the scope of his prescriptive authority, 
 14 which has always been limited to pediatrics. We disagree because this characterization of the Board’s actions assumes that it and the ALJ correctly interpreted section 12-38-111.6. And the notice requirements applicable at the outset of a proceeding cannot hinge on how a court ultimately resolves that proceeding. ¶ 27 To further explain: the exemption clause of section 12-38-
111.6 allowed Fresques to retain the prescriptive authority he obtained in 1999 if he met certain requirements not at issue here. § 12-38-111.6(4.5)(c), C.R.S. 2018. But what was the scope of Fresques’ 1999 prescriptive authority that he would be retaining? The prescriptive authority statute in effect in 1999 limited prescriptive authority to patients “appropriate” to an APN’s “scope of practice.” § 12-38-111.6(8)(a), (c), C.R.S. 1999. The regulations at the time limited prescriptive authority to patients “within” an APN’s “area of practice.” Div. of Pros. & Occupations Ch. XV, Reg. IV(A), 3 Code Colo. Regs. 716-1 (1999). Neither “scope of practice” nor “area of practice” was defined in the statutes or regulations. ¶ 28 The ALJ and Board held that “scope of practice” and “area of practice” referred to the patient population that the APN treated at the time (for Fresques in 1999, pediatrics). Under this 
 15 interpretation, the modified cease and desist order could be seen as merely forcing Fresques to practice within the confines of his prescriptive license, which has never changed. ¶ 29 But what if a reviewing court disagrees with the ALJ and Board’s interpretation? Suppose a reviewing court held that “scope of practice” and “area of practice” for an APN referred not to the patient population they care for, but rather the scope of duties of a particular APN (i.e., the scope of duties of a Nurse Practitioner, Certified Nurse Midwife, etc.). Or, alternatively, suppose a reviewing court agreed that those terms referred to a particular patient population, but that when an APN’s practice changes, like Fresques’ did in compliance with his license, the contours of his prescriptive authority automatically change with it. In either of these circumstances, the panel’s cease and desist order as modified by the ALJ would have sought to narrow or modify the scope of Fresques’ prescriptive license, thus rendering section 24-4-104(3) applicable. In short, we do not see how the applicability of certain notice requirements at the initial stage of a proceeding can hinge on 
 16 the ultimate outcome at the end of the proceeding.
3 We therefore reject the Board’s argument that section 24-4-104(3) does not apply. ¶ 30 Finally, the Board argues that any defect in notice or procedural due process was harmless because the facts are undisputed and the substantive question before us is purely legal. As the Board puts it, “[b]oth parties agree that Mr. Fresques was prescribing medication to adults while working as an APN” and therefore, even if Fresques had received proper notice, the result before the ALJ and Board would have been the same. We are not so sure. ¶ 31 As explained above, “scope of practice” and “area of practice” are not defined in the regulatory scheme and, since the ALJ’s ruling, it has become clear that the parties disagree about their meaning. At oral argument, Fresques argued persuasively that had 3 To further illustrate this point, take the panel’s original cease and desist order alleging that Fresques’ APN license was limited to pediatrics. When it was issued, it seemed to merely force Fresques to practice within the confines of his license, which confines had never changed. But viewed in light of the ALJ and Board’s ultimate conclusion that Fresques’ APN license was not limited to pediatrics, the panel’s original cease and desist order most certainly sought to limit or modify the license. 
 17 he known his prescriptive authority was being independently challenged before the ALJ, he would have presented evidence that his education and training in prescribing medications was not solely limited to pediatrics. This evidence, according to Fresques, would have supported his argument that in 1999, use of the terms “scope of practice” and “area of practice” did not evince a legislative intent to limit prescriptive authority to an APN’s population focus. The lack of notice meant that Fresques had little incentive to present this evidence or argument. Indeed, the ALJ granted summary judgment based on her interpretation of section 12-38-
111.6 without any relevant argument or evidence. And the Board simply adopted the ALJ’s ruling. The ALJ’s ruling may have been different had she received arguments from both sides on this issue. This possibility is why the principle of party presentation is central to our entire justice system. See Greenlaw v. United States, 554 U.S. 237, 243-44 (2008); Galvan v. People, 2020 CO 82, ¶ 45. ¶ 32 We therefore conclude that Fresques’ right to procedural due process was violated because he did not receive proper notice at any time before the ALJ issued her ruling that the Board sought to limit his prescriptive authority independently from any limit on his APN 
 18 license. Based on this conclusion, we reverse the portion of the Board’s order providing that Fresques’ prescriptive authority is limited to pediatrics. III. Conclusion ¶ 33 The portion of the Board’s order limiting Fresques’ prescriptive authority to pediatrics is reversed. This opinion does not prevent the Board or panel from issuing a new cease and desist order challenging Fresques’ prescriptive authority under section 12-38-
111.6. JUDGE NAVARRO and JUDGE GROVE concur.